## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BRIAN BURKE,

    Plaintiff / Counter-Defendant,

  v.

RECORD PRESS, INC.,

    Defendant / Counter-Claimant.

Civil Action No. 08-0364
DAR

## MEMORANDUM OPINION

  Plaintiff, as relator in a *qui tam* action commenced pursuant to the False Claims Act, 31 U.S.C. §§ 3729-3733, alleged that Defendant Record Press, Inc., overcharged the United States Government Printing Office (hereinafter "government" or "GPO") for the printing of briefs in a matter then pending in the United States Court of Appeals for the Second Circuit.  More specifically, Plaintiff alleged that two invoices submitted by Defendant to the GPO "[were] fraudulent as they contravene[d] the express language of GPO's contract with Record Press[]"; that "Record Press charged the Government ten times the contract rate for collating, trimming and binding briefs and appendices"; and that "it is Record Press's standard practice to charge the Government ten times the contract rate for this service."  Joint Report Pursuant to Rule 16.3(d) ("Joint Report") (Document No. 16) at 1-2; *see also* Verified Complaint ("Complaint") (Document No. 1) ¶¶ 10-24.

  After the United States declined to intervene, *see* United States' Notice of Election to Decline Intervention (Document No. 5), the court (Sullivan, J.) ordered, *inter alia*, that the

complaint be unsealed, and that Plaintiff serve it upon Defendant, *see* Order (Document No. 6).

Defendant filed its answer in accordance with the court's scheduling order.  Answer to Plaintiff's

Verified Complaint ("Answer") (Document No. 10); *see also* 07/17/2008 Minute Order.

Defendant asserted "that the bills it submitted are fully in accordance with its contract with

GPO," and that "the [contract and invoices] plainly show that no fraud has occurred."  Joint

Report at 2.  In addition, Defendant pled as a counterclaim tortious interference with prospective

economic advantage, *see* Answer at 7-8, an allegation which Plaintiff denied, *see* Answer to

Defendant's Counterclaim (Document No. 13).

      With the consent of the parties, trial of Plaintiff's claims against Defendant proceeded to

trial before this court.  *See* Notice, Consent, and Reference of a Civil Action to a Magistrate

Judge (Document Nos. 48, 88); 11/01/2010 Minute Order; 02/11/2011 Minute Order (denying

Defendant's Motion for Summary Judgment); 02/14/2011 Minute Entry (bench trial commenced

and concluded).  Plaintiff offered the testimony of three witness, and testified before he rested.

Plaintiff's first witness, Hugh Wilmot, Jr., the president of Defendant Record Press, Inc.,

identified the contract between Record Press and the GPO, and the two invoices at issue.  Mr.

Wilmot testified that the invoices were "billed consistently" with the applicable provisions of the

contract between Record Press and GPO.  Transcript of Bench Trial (Document No. 89) 36:20,

46:3-4, 55:1-12, 55:19-22; 56:9.  Plaintiff's second witness, Calvin Adgerson, Branch Chief of

the GPO Commercial Billing and Examination Section, testified that after investigation of

Plaintiff's inquiry regarding the rate at which he was billed for the services of Record Press, "[i]t

was determined that we had been processing the invoices correctly, and that there were no issues

in the way we were processing them."  Tr. 77:24-78:1.

Plaintiff testified that he first inquired about a line item on an invoice for the services of Record Press "[because] I believe[d] as I do today [that this] is an outrageous charge."  Tr. (Document No. 90) 23:6-8; *see also* Tr. 25:17-20 ("some of the costs seemed quite competitive, per page costs, and the collating, trimming, and binding costs were this outrageous charge, and it certainly didn't - - it defied logic to me . . . .").[1]  Plaintiff acknowledged that he never worked for either Record Press or the GPO, and that he did not participate in the drafting of the contract between those two entities.  Tr. 31:1-10.

At the close of Plaintiff's case, Defendant moved for judgment pursuant to Rule 52(c) of the Federal Rules of Civil Procedure.  *See* Tr. (Document No. 90) 59:21-23.  Both parties were heard on the record with respect to said motion, and neither asked for an opportunity to file written submissions.  *See* Tr. 59:21-60:4, 92:10-109:20.[2]

## APPLICABLE STANDARDS

### *False Claims Act*

Congress, through the False Claims Act, "created a cause of action against anyone who

---

[1]  The testimony of Plaintiff's remaining witness, Morris Gocial, was confined to damages.  Mr. Gocial opined that Plaintiff's damages were the difference between the rate at which Defendant billed the government, and the rate which Plaintiff thought was applicable.  Tr. (Document No. 90) 12:11-16, 16:7-9 (Plaintiff's damages are "the difference between $37.24 and $372.40," and "the difference between $138.67 and the $1,386.70."); *see also* Plaintiff Brian Burke's Pretrial Statement (Document No. 51) at 2 ("Mr. Burke seeks damages for Record Press's overcharges under its contracts with the GPO.  The damages are equal to the amount charged in line item II(d) minus the amount which should have been charged by prorating the charge per 10 copies.").  *But see* Plaintiff Brian Burke's Second Supplemental Pretrial Statement (Document No. 55) at 4 ("invoices for which the disputed line item was charged . . . demonstrates total damages of $527,122.10.").

[2]  The parties, as a convenience to the court, agreed that Defendant would call one of its witnesses, who had "been patiently waiting" throughout the day.  Tr. (Document No. 90) at 59:21-90:11.  As the court bases its consideration of Defendant's motion for judgment on partial findings solely upon the evidence offered by Plaintiff, the court has no occasion to address herein the testimony of the witness called by Defendant.

'knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval[.]'" *United States v. DRC, Inc.*, 856 F. Supp. 2d 159, 167 (D.D.C. 2012) (footnote omitted) (quoting 31 U.S.C. § 3729(a)(1) (2000)). "A proper False Claims Act claim has three elements: (1) the defendant presented a claim for payment or approval to the government, (2) the claim was 'false or fraudulent,' and (3) the defendant acted knowing that the claim was false." *United States ex rel. Folliard v. Govplace*, No. 07-719, 2013 WL 1092859, at *3 (D.D.C. Mar. 18, 2013) (citation omitted); *see also DRC, Inc.*, 856 F. Supp. 2d at 167 (citation omitted). A "claim" is broadly defined "to include 'any request or demand, whether under contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money . . . or if the Government will reimburse . . . any portion of the money.'" *United States ex rel. Brown v. Aramark Corp.*, 591 F. Supp. 2d 68, 73 (D.D.C. 2008) (citation omitted). Thus, the Act "essentially creates liability for 'all fraudulent attempts to cause the Government to pay out sums of money.'" *Id.* (citations omitted) (internal quotation marks omitted); *see also United States ex rel. Hood v. Satory Global, Inc.*, No. 11-774, 2013 WL 2274798, at *8 (D.D.C. May 23, 2013) (citation omitted) ("The [False Claims Act's] 'chief purpose . . . is to prevent the commission of fraud against the federal government and to provide for the restitution of money that was taken from the federal government by fraudulent means.'").

"A claim may be false under the [False Claims Act] if it is either factually or legally false." *United States v. Toyobo Co.*, 811 F. Supp. 2d 37, 45 (D.D.C. 2011) (citation omitted). "A claim can be 'factually false if it invoices for services that were not rendered' or incorrectly describes goods or services provided." *Id.* (citation omitted). "A claim may be 'legally false' if

it represents falsely that the party submitting the claim has complied with an applicable federal

statute or regulation, or with a contractual term." *DRC, Inc.*, 856 F. Supp. 2d at 167 (citation

omitted); *cf. Toyobo Co.*, 811 F. Supp. 2d at 45 (citation omitted) ("One way to plead a false

claim under this theory is to plead 'that the contractor withheld information about its

noncompliance with material contractual requirements.'").  Claims "alleged[ly] . . . submitted

under a contract procured by fraud can be actionable" even in the absence of allegations that the

claims were factually or legally false.  *Toyobo Co.*, 811 F. Supp. 2d at 46 (citation omitted); *see*

*also DRC, Inc.*, 856 F. Supp. 2d. at 168 (citation omitted) ("Claims for payment submitted under

a contract procured by fraud also may be actionable.").

The False Claims Act includes a scienter requirement; thus, the relator must demonstrate

that the defendant presented a false claim "knowingly, which entails having 'actual knowledge of

the information[,]' acting 'in deliberate ignorance of the truth or falsity of the information[,]' or

acting 'in reckless disregard of the truth or falsity of the information.'"  *DRC, Inc.*, 856 F. Supp.

2d. at 168 (quoting 31 U.S.C. § 3729(b)).  "Strict enforcement of the [False Claims Act's]

scienter requirement will . . . help to ensure that ordinary breaches of contract are not converted

into [False Claims Act] liability."  *Id.* (citation omitted) (internal quotation marks omitted).

In order to prevail on a claim brought pursuant to the False Claims Act, a plaintiff must

prove all elements of the cause of action by a preponderance of the evidence.  *See, e.g.*, *Grand*

*Acadian, Inc. v. United States*, 105 Fed. Cl. 447, 457 (Fed. Cl. 2012) (citations omitted).

### *Rule 52(c)*

Rule 52(c) of the Federal Rules of Civil Procedure provides, in pertinent part, that

> [i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 52(c); *see also Nkpado v. Standard Fire Ins. Co.*, 697 F. Supp. 2d 94, 98 n.4

(D.D.C. 2010)  (quoting Advisory Committee Notes to Rule 52(c)) (1991 amendment to the rule

"authorizes the court[] to enter judgment at any time that it can appropriately make a dispositive

finding of fact on the evidence.").

In its determination of a motion made in accordance with Rule 52(c), "a district court may

not draw any special inferences in favor of the non-movant"; rather, "the court must weigh the

evidence, resolve any conflicts in it, and decide where the preponderance lies."  *United States ex*

*rel. Ervin & Assocs. v. Hamilton Secs. Grp., Inc.*, 298 F. Supp. 2d 91, 92-93 (D.D.C. 2004)

(citations omitted).  In so doing, the trier of fact "retains, the authority, if not the obligation, to

draw reasonable inferences from the facts found."  *Id.* at 93 n.3.

**FINDINGS OF FACT**

Upon consideration of the evidence adduced by Plaintiff and all reasonable inferences to

be drawn therefrom, the court finds that Plaintiff has demonstrated, at most, that he believes that

Defendant Record Press overcharges the government for its services.  However, the court finds

that Plaintiff's subjective concern falls far short of a showing, by a preponderance of the

evidence, that Defendant presented "false or fraudulent claims for payment or approval,"

Complaint ¶ 26 (Count I), or that Defendant "knowingly made [or] used . . . false or fraudulent

records or statements[] to get false or fraudulent claims paid or approved by the Government," *id.*

¶ 28 (Count II).

The gravamen of Plaintiff's complaint is that Defendant overcharged the government for the services it provided pursuant to its contract with the United States Government Printing Office.  Complaint ¶ 3 ("Mr. Burke investigated and discovered that Defendant was overcharging the Government nearly 10 times the rate specified by its contract with [the Government Printing Office]."); *see also id.* ¶ 22 ("In Relator's litigation alone, Record Press overbilled the Government approximately $1,700.00, nearly ten times the amount it was authorized to charge under the GPO contract."); *id.* ¶ 24 ("[A]pplying this overcharge to GPO's estimated requirements in the RFP, Record Press overcharged the Government more than $280,000.00 in one contract year.  Because Record Press is a long-time GPO contractor, the total overbilling is likely many times greater than the one-year estimate.").  However, both the President of Defendant Record Press and the Branch Chief of GPO's Commercial Billing and Examination Section, called by Plaintiff in his case-in-chief, testified that the rate at which Defendant billed the government was indeed the rate for which the contract between Defendant and the government provided, and that Defendant submitted its invoices in accordance with the terms of the contract.

Moreover, the evidence offered by Plaintiff demonstrates that Defendant and the government had a meeting of the minds with respect to rates which Defendant would charge for services provided pursuant to the contract.  Indeed, the alleged victim, through the agency official who appeared in Plaintiff's case-in-chief, testified that there was no fraud.  Plaintiff offered no evidence to the contrary.

In so finding, the court need not address the credibility of Plaintiff, as his testimony was

largely confined to his belief that the costs he was assessed by the United States Court of Appeals for the Second Circuit were "outrageous." *See, e.g.*, Tr. (Document No. 90) at 23:8. However, even fully crediting Plaintiff's testimony, the undersigned finds that no inference that Defendant submitted a false claim is warranted.

**CONCLUSIONS OF LAW**

On the basis of the foregoing findings, the court concludes that Plaintiff's claims cannot be maintained under controlling law. Accordingly, Defendant's motion for judgment on partial findings pursuant to Rule 52(c) of the Federal Rules of Civil Procedure will be granted by separate order, and the Clerk of the Court will be directed to enter judgment in favor of Defendant.[3]

|  |  |
|---|---|
| | /s/ |
| June 12, 2013 | DEBORAH. A. ROBINSON |
| | United States Magistrate Judge |

---

[3] After the trial, Defendant moved to dismiss its counterclaim, *see* Record Press Inc.'s Motion to Voluntarily Dismiss its Counterclaim (Document No. 72); the court, by minute order, granted the motion, *see* 05/21/2013 Minute Order.